UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PETER KAP PI,

    Petitioner,

       v.                       CAUSE NO. 3:26-CV-461-CCB-SJF

BRIAN ENGLISH,

    Respondent.

## **OPINION AND ORDER**

Immigration detainee Peter Kap Pi, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The Warden answered the petition, and Pi has filed a reply. The petition is ready to be decided.

## BACKGROUND

Pi is a citizen and national of Burma who entered the United States as a refugee in 2015. ECF 7-1 at 3. He became a lawful permanent resident in 2017. *Id.* in May 2025, Pi was convicted in Louisiana of aggravated second degree battery with a knife and was sentenced to 6 years' imprisonment, suspended, and three years' probation. *Id.* at 3-4.

On July 1, 2025, Pi was arrested and detained by Immigration and Customs Enforcement (ICE). ECF 7-1 at 3. He was served a Notice to Appear, charging him with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for committing a crime of violence for which the term of imprisonment ordered is at least a year. *Id.* at 2-5.

Pi was ordered removed to Burma/Myanmar on August 25, 2025. ECF 7-1 at 2-3. He reserved his right to appeal, but did not file one. Pi filed this habeas petition in April 2026, arguing his continued detention was unreasonable because he has been detained longer than the presumptively reasonable period of 180 days, and his removal is not possible because there is no repatriation agreement between Burma and the United States.

In answering the petition, the Warden provides a declaration from a deportation officer, who attests that his office continues to work with Headquarters Removal Management Division to attempt to obtain travel documents to remove Pi to Burma/Myanmar. ECF 7-4. However, he continues, Pi refuses to comply and will not assist in obtaining travel documents. The officer says ICE is still working on obtaining travel documents without Pi's assistance.

In reply, Pi denies that he has failed to cooperate. He says that on January 4, 2026, he contacted ICE via his tablet and asked why he hadn't been deported yet. ICE replied, "You are assisting ICE with your immigration removal proceedings." ECF 10 at 2. There was no explanation for the delay or any mention of what he needed to do to assist in his removal. He continues that on March 10, 2026, he contacted ICE again to ask about his 180-day custody review and why he hadn't been deported yet, and they replied, "You have a final order of removal. You do not get a custody review." *Id.* at 2. At this point, he explains he went into a depression and refused to interact with ICE. Then, he says, he received a notice of failure to comply. He was surprised by this because he had been told in January 2026 that he had been assisting ICE. He says that

2

when he received this notice, he contacted ICE to refute the allegations and complied with all requests for travel documents. He asserts, though, that he sees no likelihood in the reasonably foreseeable future for his removal because the Burma Embassy contacted him, but he does not have any relatives in Burma or know anybody there.

<u>SUBJECT MATTER JURISDICTION</u>

The Warden argues that the court lacks subject matter jurisdiction over Pi's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

<u>MERITS</u>

The Warden first argues that Pi's detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. After a noncitizen is ordered removed, the Immigration and Nationality Act (INA) directs that the Attorney General "shall remove the alien from the United States within a period of 90 days," called the "removal period." 8 U.S.C. § 1231(a)(1)(A). Detention during the removal period is mandatory while the government works to effectuate the removal. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders

3

a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B). Because Pi did not appeal to the Board of Immigration Appeals, his removal order became administratively final on September 24, 2025, when the time to appeal expired. *See* 8 U.S.C. § 1101(a)(47)(B). His removal period ended December 23, 2025.

The Warden argues that Pi is still in the removal period, despite the passage of the statutory 90 days, because his noncooperation with removal efforts has extended the removal period. Under 8 U.S.C. § 1231(a)(1)(C), "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." The Warden, however, fails to provide evidence that Pi falls under this exception. He relies on the deportation officer's declaration that Pi "refuses to comply and will not assist in obtaining travel documents." ECF 7-4 at 3. But the Warden does not describe what specific tasks Pi refused to complete or when these requests were made. The conclusory statement of a deportation officer that Pi is not cooperating is insufficient to invoke this extension.

Beyond the removal period, the statute authorizes further detention for three groups of noncitizens: (1) those who are inadmissible under 8 U.S.C. § 1182, (2) those who are removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) for certain criminal convictions, or (3) those who have "been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C.

4

§ 1231(a)(6). All other noncitizens who have not been removed in that 90-day period are to be released subject to supervision. 8 U.S.C. § 1231(a)(3). Because Pi was removed under § 1227(a)(2), his continued detention is authorized.

For those noncitizens who are subject to continued detention under § 1231(a)(6), the statute seemingly authorizes indefinite detention if their removal cannot be carried out. But the Supreme Court read "an implicit limitation" into the statute, namely that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). In recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable, the Supreme Court adopted a "presumptively reasonable period of detention" of six months. *Id.* "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Pi passed the six-month presumptively reasonable period of detention at the end of March 2026, and so the court turns to whether removal is reasonably foreseeable. Pi relies on the fact that there is no repatriation agreement between the United States and Burma to argue his removal is not reasonably foreseeable. That provides good reason to believe his removal is not reasonably foreseeable, so the burden shifts to the government to rebut this. The government argues the lack of repatriation agreement is

not dispositive because, despite the lack of an agreement, Burma is issuing travel documents. The Warden cites to a recent case from this district, in which the Burmese government issued a travel document to a Burmese refugee. *See Lian v. English*, No. 326cv522 DRL-SJF (N.D. Ind. decided June 4. 2026). The Warden's reliance on *Lian* provides some support that removal remains a possibility. But without more, it is insufficient to rebut Pi's showing that removal is not reasonably foreseeable. The Warden provides no information about what information the Burmese government requests when deciding whether to issue travel papers, and so there is no evidence that the Burmese government would act favorably when presented with a travel document request for Pi. Moreover, the record does not contain information about how many travel requests are made to Burma, so the issuance of one travel document does not provide evidence about how likely it is that Pi would be granted one.

Pi has been detained under § 1231 at this point for more than nine months, and no concrete steps have been made toward his removal, nor is there a plan outlined for obtaining travel documents. This indeterminate timeline does not show a significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. ("[F]or detention to remain reasonable, as the period of prior postremoval [order] confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink."). Pi must be released, though removal efforts may continue after his release.

For these reasons, the court:

6

(1) **GRANTS** the petition for writ of habeas corpus (ECF 1) and **ORDERS** the respondent to release Peter Kap Pi on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **July 6, 2026**; and

(2) **DIRECTS** the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED on July 2, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT